19CA2007 Peo v Meleski 12-16-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA2007 Mesa County District Court No. 18CR462 Honorable Matthew D. Barrett, Judge The People of the State of Colorado, Plaintiff-Appellee, v. James Alan Meleski, Defendant-Appellant. JUDGMENT AFFIRMED Division VII Opinion by JUDGE PAWAR Navarro and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 16, 2021 Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee The Law Firm of Tanja Heggins, Tanja Heggins, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, James Alan Meleski, appeals the judgment of conviction in his criminal case. He contends that the prosecution presented insufficient evidence to support the sole count of tampering with a witness or victim. We disagree and therefore affirm. I. Background ¶ 2 Meleski pleaded guilty to assault charges in case number 17CR384 based on allegations that he strangled his ex-wife. He was sentenced to probation and the court issued a protection order restraining him from, among other things, going to his ex-wife’s home. ¶ 3 A few months later, Meleski went to his ex-wife’s home where they had a verbal altercation, he suffered a self-inflicted stab wound, and he left. Two days later, he returned. His ex-wife called the police who responded and arrested Meleski for violating the protection order. ¶ 4 After his arrest, a probation revocation complaint was filed in case number 17CR384. Meleski appeared in court and requested that his probation violation hearing be set in fourteen days. While 
2 in custody awaiting that hearing, Meleski called his ex-wife and had the following conversation: [Meleski]: Hey I’m sorry. I going to tell, I’ve been trying to tell them that I lied. I wasn’t there. It never happened. It happen[ed] in my truck at City Market that’s what I’m trying to do. Go along with it. Just go along with it. I was there on Sunday breaking the restraining order there was no violent acts so that we can get back on track. . . . I’m very sorry. I’m — [Ex-wife]: You’re asking me to do what? [Meleski]: Just tell them I wasn’t there. I wasn’t there Saturday. I wasn’t there Saturday. Hello? [Ex-wife]: I’m not going to lie. Why would I lie? Why — why are you asking me to lie? [Meleski]: Why? [Ex-wife]: Yes. [Meleski]: Because that puts a violent act at the house. ¶ 5 Based on this conversation, the prosecution charged Meleski with tampering with a witness or victim in violation of section 18-8-
707, C.R.S. 2021. A jury found him guilty. II. Sufficient Evidence Supported the Conviction ¶ 6 Regardless of whether a criminal defendant has preserved a claim challenging the sufficiency of the evidence, we review the 
3 record de novo to determine whether the evidence presented was sufficient in both quantity and quality to sustain the conviction. McCoy v. People, 2019 CO 44, ¶¶ 34, 63. In determining whether the prosecution has met its burden to establish a prima facie case of guilt, we consider “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” Id. at ¶ 63 (quoting Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010)). ¶ 7 As relevant here, a person commits witness or victim tampering if he intentionally attempts to induce a witness or victim or a person he believes is to be called to testify as a witness or victim in any official proceeding or who may be called to testify as a witness to or victim of any crime to testify falsely or unlawfully withhold any testimony. § 18-8-707(1)(a). The plain language of this subsection of the statute “does not require that the witness or victim actually testify at a proceeding for the crime to occur.” People v. Cunefare, 102 P.3d 302, 305-06 (Colo. 2004). Indeed, “the language does not even require that the witness or victim have been 
4 legally summoned to appear at the proceeding.” Id. at 306. Rather, such a person need only “be in a position such that he or she may offer testimony in an official proceeding.” Id. ¶ 8 At trial, Meleski did not dispute that the conversation occurred between him and his ex-wife. Nor did he dispute that he was attempting to induce his ex-wife to lie about the location of the stabbing incident. He instead argued that the prosecution failed to prove beyond a reasonable doubt that he believed his ex-wife was likely to be called to testify in an “official proceeding” because there was “no evidence that shows the stabbing [was] somehow tied to [the] protection orders.” He reiterates this position on appeal, arguing that he did not mention the protection order in the conversation but rather “specifically refer[red] to the stabbing” incident and there were “no official proceedings related to the stabbing” because “[n]o one was charged or being prosecuted” for that act. ¶ 9 However, the prosecution offered evidence at trial that Meleski knew he had violated the protection order protecting his ex-wife when the stabbing incident occurred at her home. Indeed, Meleski himself confirmed that he was charged with violating a protection 
5 order for “being at [his ex-wife’s] residence on 2-23-2018,” which is when the stabbing incident was alleged to have occurred. He further confirmed that the probation violation hearing was coming up when he called his ex-wife and asked her to lie about the location of the stabbing incident. And though he testified that he did not know whether his ex-wife would be called at that hearing, he confirmed that she was a witness to the events that led to it. Finally, Meleski confirmed that his intent in requesting that his ex-
wife say that the stabbing occurred at City Market instead of her home was to get her to lie about where the stabbing occurred. ¶ 10 Viewing this evidence in the light most favorable to the prosecution, we conclude that the prosecution presented substantial and sufficient evidence to support a conclusion by a reasonable mind that Meleski committed the crime of tampering with a witness or victim. ¶ 11 His argument that the conversation with his ex-wife centered on his belief that the stabbing “would affect his ability to get his daughter back from foster care” is unavailing. That is, the jury was free to reject this testimony as not credible and draw a contrary inference about Meleski’s intent based on the timing of his phone 
6 call, his admission that he was attempting to get his wife to lie, and the fact that his ex-wife was “in a position such that . . . she may offer testimony” in the probation violation proceeding. See Cunefare, 102 P.3d at 306. III. Conclusion ¶ 12 The judgment is affirmed. JUDGE NAVARRO and JUDGE GROVE concur.